UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.   Case No.  8:20-CR-200-VMC-CPT

DANILO ALFONSO TABORDA-MENESES
_____/

# SENTENCING MEMORANDUM

## I.   Legal Framework for Sentencing Analysis

It is now well established that sentencing requires a two-step process.  First, the district court must correctly calculate the sentencing guideline range. Second, the district court must consider the factors outlined in 18 U.S.C. §3553(a) to determine a reasonable sentence as to each defendant in each case.

In United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), the Eleventh Circuit enumerated the ten factors used to determine a reasonable sentence: (1) the nature and circumstances of the offense and the defendant's personal history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide a just punishment; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with appropriate educational training, vocational training, or medical care; (6) types of sentences available; (7) the correctly-calculated sentence range under the Sentencing Guidelines; (8) pertinent policy statements of the U.S. Sentencing

Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

## II. Analysis of 18 U.S.C. § 3553(a) Factors

### A. History And Characteristics Of The Defendant

Danilo Alfonso Taborda-Meneses is a 44-year-old citizen of Colombia.[1] Mr. Taborda-Meneses was born in the Colombian Department of Antioquia.[2] The Department of Antioquia is in western Colombia and includes a section of coastline that is located just east of the isthmus of Panama.

Mr. Taborda-Meneses upbringing was plagued by tragedy, poverty, and violence.

When Mr. Taborda-Meneses was growing up, he and his family lived in an area of Antioquia called *La Esperanza*. The home in which the family resided was humble. It was a two-room structure made of adobe. One of the floors was earthen while the other was cement. The bathroom and kitchen were outside.[3]

*La Esperanza* was in an area of Colombia which experienced high levels of violence during the Colombian civil war. There were three armed groups which

---

[1] PSR, Page 3
[2] Colombia is divided up into 32 geographic areas called departments; "South America: Colombia." *The United States Central Intelligence Agency World Fact Book*, 2019, https://www.cia.gov/library/publications/the-world-factbook/geos/co.html.
[3] May 3, 2021, interview of Mr. Taborda-Meneses.

were constantly fighting amongst themselves, and the civilians of *La Esperanza* frequently found themselves in the crosshairs.[4]

When Mr. Taborda-Meneses was around 14 or 15 years old, three armed men from a group called the EPL (*Ejército Popular de Liberación*) arrived at the family's home around 9:00 a.m. on a Sunday morning. The militants forced the family out of the house, separated the family members, and then ordered them to get down on the ground. The leader of the armed men had a rifle; he accused the family of working with the Colombian government. Mr. Taborda-Meneses' father begged the militants to leave his family in peace and take him. However, the three men took Mr. Taborda-Meneses' brother Jairo, who was a few years older than Mr. Taborda-Meneses at the time, and led him away. Moments later, the family heard six gun shots. The militants returned to the home shortly after and told the family that Jairo was dead, and that they could no longer live in their home. The family fled *La Esperanza* that very morning, unable to even bury Jairo.[5]

The family hiked for about five hours to a village called Mututa. There, a family friend allowed them to live in a small, wooden structure with an earthen floor and palm fronded roof. The structure had no running water and no electricity.[6] Mr. Taborda-Meneses was no longer able to attend school because there were no schools

---

[4] Id.
[5] Id.
[6] Id.

nearby. The family was anguished and devastated over the loss of Jairo, and Mr. Taborda-Meneses' mother took the loss of her son particularly hard. Mr. Taborda-Meneses' mother died of cancer not long after Jairo's death.[7] At the time of his mother's death, Mr. Taborda-Meneses was approximately 15 years old.[8]

Ever since he was a teenager, Mr. Taborda-Meneses has worked to support himself and his loved ones. He has worked as a laborer building corrals, a brick mason, and as a field hand at a banana farm.[9] Mr. Taborda-Meneses has been in a romantic relationship with Ms. Miriam Usuga for approximately 21 years.[10] According to Miriam, Mr. Taborda-Meneses has been a good father, good husband, and is a hard-working person.[11] The couple have two sons. One of the sons, the couple named after Mr. Taborda-Meneses deceased brother, Jairo. The other son, Estiven, suffers from a severe form of autism.[12] Estiven does not speak.[13] Medical records from Colombia describe his condition as "mental retardation."[14] Mr. Taborda-Meneses' statement during his presentence investigation interview that his

---

[7] PSR, page 8.
[8] Id.
[9] PSR, page 10.
[10] PSR, page 9.
[11] See Exhibit #1A
[12] PSR, page 9.
[13] Id.
[14] See Exhibit #4A.

son is no longer getting the care he needs is confirmed by the medical records, which state that Estiven is "currently without any follow ups by specialists."[15]

B. **The Need To Protect The Public**

Mr. Taborda-Meneses is not a danger to reoffend.

First, Mr. Taborda-Meneses is 44 years old.[16] If Your Honor were to grant a three-level downward variance at sentencing, Mr. Taborda-Meneses's low-end sentencing guideline would be 97 months (i.e., 8 years). Therefore, assuming Mr. Mr. Taborda-Meneses were to serve 85% of his sentence, he would not be released under around his 50th birthday. Prison inmates released in their early fifties have lower recidivism rates than their younger cohorts.[17]

Second, Mr. Taborda-Meneses has no criminal history whatsoever. The United States Sentencing Commission has noted that first time offenders such as Mr. Taborda-Meneses are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.[18]

---

[15] Id.
[16] PSR, Page 3
[17] See United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (noting that according to the United States Sentencing Commission, recidivism rates decline consistently as age increases.); *See also*: U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 12 (May 2004) (noting that recidivism rates "decline relatively consistently as age increases").
[18] *Recidivism and the First Offender*, United States Sentencing Commission, May 2004

Third, Mr. Taborda-Meneses understands when he agreed participate in this smuggling venture that he made the biggest mistake in his life. The results of that decision have been disastrous for him; he has been plucked from his native country, stripped of all that is familiar to him, and separated indefinitely from his family. Most stinging to Mr. Taborda-Meneses, he has lost the ability to support his son Estiven. Given the great privation and suffering he experienced as a child, Mr. Taborda-Meneses knows the hardship his family is likely to endure in the coming years.[19]

When the Bureau of Prisons does eventually release Mr. Taborda-Meneses, he will undoubtedly steer clear of any contact with drug shipments for the remainder of his life.

### C. The Sentence Range Under The Sentencing Guidelines

The PSR calculates Mr. Taborda-Meneses' advisory guideline range to be an offense level 33, Criminal History I.[20] This Guideline range carries a recommended sentence of 135 to 168 months imprisonment.[21]

---

[19] Studies in the United States have shown that among children of incarcerated fathers, there are higher rates of homelessness, poor developmental outcomes, and greater family instability. *See*: When A Parent Goes To Prison, A Child Also Pays A Price; National Public Radio, June 8, 2014.
[20] PSR, Page 11.
[21] USSG Sentencing Table

## III. Conclusion

The Defense respectfully requests this Court take all the forgoing factors into consideration and vary downward three offense levels, which would result in a sentence of 97 months of incarceration. Such a sentence would be "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ *David C. Hardy*
David C. Hardy
FL Board Certified – Criminal Trial Law
Florida Bar No. 689661
The Hardy Law Firm, P.A.
1710 N. 19th Street, Suite 215
Tampa, FL 33605
Telephone (813) 990-9547
Email: dch@thehardylawfirm.com

# EXHIBITS

Exhibit 1A — Letter from Miriam Usuga
Exhibit 1B — Certification of Translation

Exhibit 2A — Letter from Maritza Chaverra Valoys
Exhibit 2B — Certification of Translation

Exhibit 3A — Letter from Favio Enrique Medina
Exhibit 3B — Certification of Translation

Exhibit 4A — Medical Records by Dr. Noveña Benitez
Exhibit 4B — Certification of Translation

**Certificate of Service**

I HEREBY CERTIFY that on the 25th day of May 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to Special Assistant United States Attorney Dan Baeza.

<pre>
                                        /s/ David C. Hardy
                                        David C. Hardy
                                        FL Board Certified – Criminal Trial Law
                                        Florida Bar No. 689661
                                        The Hardy Law Firm, P.A.
                                        1710 N. 19th Street, Suite 215
                                        Tampa, FL 33605
                                        Telephone (813) 990-9547
                                        Email: dch@thehardylawfirm.com
</pre>